# Bush's Appeal.

A testator, by his will, gave a part of his estate to his daughter, a married woman; and in another part of his will, in order to secure it to her, he appointed a trustee for her share, directing him to invest the same at interest, to pay her the interest yearly during her life, and at her death to pay the principal to her heirs in equal parts: *Held*, that, on becoming discovert, the legacy vested in the daughter, discharged of the trust; and that she was entitled to have it paid over to her by the trustee.

In judging of the quantity of an estate in land, the law regards rather its substantial ingredients than the form of the grant, and disregards all restrictions that are incompatible with its substantial character.

Under such circumstances, the trustee ought not to be decreed to pay the costs incurred in resisting the claim of the *cestui que trust.*

APPEAL from the Orphans' Court of *Chester county.*

This was an appeal by Jacob Bush, the trustee of Sarah Snyder, under the will of Christian Friday, deceased, from the decree of the court below directing him to pay over the trust fund in his hands, to the said Sarah Snyder, the *cestui que trust.*

Christian Friday, by his will, dated the 13th November 1847, devised and bequeathed certain real and personal estate to his wife, for life, or during widowhood; and after her decease or marriage, directed the same to be divided among his children and grandchildren; the share of his daughter, Sarah Snyder, *to be secured* as thereinafter specified.

In another part of his will, he bequeathed the residue of his estate, to his said children and grandchildren; his daughter, Sarah Snyder, to have one share thereof; all of which legacies and bequests, he provided, should be paid to his heirs, as soon as his executors should have turned his estate into cash.

He then provided as follows, in respect to the share of Sarah Snyder, who was then the wife of John Snyder:—

"It is my will, and I do order and appoint my son-in-law, Jacob Bush, trustee for my daughter Sarah Snyder; and I do order and

direct that my son-in-law, Jacob Bush, shall take and receive from my executors, all of my daughter Sarah Snyder's legacy, and put the same at interest, as soon after receiving the same, as he can conveniently do the same; and pay the interest to her, the said Sarah Snyder, yearly and every year, during her natural life; and after her decease, the said Jacob Bush, his heirs or lawful representatives, to pay the principal to the said Sarah Snyder's heirs, share and share alike, in equal parts."

On the 26th April 1858, Sarah Snyder presented a petition to the Orphans' Court, setting forth the trust created by the will of her deceased father; and that the trustee had received the principal sum of $2666.25, and had paid to her $453.95 on account of interest. That her husband, the said John Snyder, was since deceased; that the object of the testator in creating the trust, was to protect and preserve her legacy for her separate use; and that she was advised, the said trust was ended and determined, by the death of her husband; and that she was entitled to receive from the trustee, the principal and interest of the said legacy.

The trustee, in his answer, admitted the creation of the trust, and the receipt of the trust funds; but averred that it was a subsisting trust, and submitted himself to the order and decree of the court in the premises.

The auditor reported, that the petitioner was entitled to have the principal of the legacy paid to her absolutely. To which report the following exceptions were filed by the trustee:—

1. The auditor erred, in receiving verbal testimony to show that Sarah Snyder had an intemperate husband, who, in 1831, was sold out by the sheriff; and then, from that evidence, independent of the will itself, determining what the intention of Christian Friday was, in creating the trust.

2. The auditor erred, in reporting "that the purpose of the testator in putting it (Sarah's share) in trust, although not expressed in the will, is to be found in the fact that Sarah's husband was insolvent and intemperate."

3. The auditor erred, in reporting that the trust ceased upon the death of John Snyder; and that Sarah Snyder being under no disability, and capable to manage her own affairs, became entitled to receive the legacy.

4. The auditor erred, in reporting that the trustee, in retaining the trust funds in his own hands, and investing them in his own real estate, was guilty of such mismanagement that the court should require him to give security, although he be perfectly solvent, and the money safe in his hands.

5. The auditor erred, in reporting that the trustee was entitled to the compensation of $3.20, and no more, because he had applied the money in payment of his own real estate, instead of investing it among third persons.

6. The auditor erred, in conjecturing the intention of the testa-

tor from evidence outside of the will; and upon the assumption of that intention, destroying the trust, and giving the legacy itself to Sarah, who was to receive no more than the interest thereof.

The court below overruled these exceptions, confirmed the auditor's report, and directed the trustee to pay over the amount in his hands to the legatee; and further decreed that he should pay the expenses of the audit. From this decree, the trustee took the present appeal.

*U. V. Pennypacker*, for the appellant.

*Butler*, for the appellee.

The opinion of the court was delivered by

LOWRIE, C. J.—Christian Friday, by his last will (1847) gave a part of his estate to his daughter Sarah Snyder, a married woman, and in another part of his will, in order to secure this to her, he appointed Jacob Bush trustee for her legacy, directing him to invest the same at interest, and to pay her the interest yearly during her life, and at her death to pay the principal to her heirs in equal parts. Her husband is now dead, and she claims that the legacy is now her own, in absolute right, discharged of the trust, and ought to be paid over to her; and so it was decreed in the court below. We think this is right.

On the expressed intention of the testator, the whole legacy was for his daughter; and the creation of the trust was not to lessen her interest in it, but to "secure" it to her. He was providing against her husband, in the usual form of a trust, and not providing a protection for his daughter's heirs against their mother. Now that the husband is dead, the trust is without purpose, and she may claim an account and payment of the legacy; and this has very often been decided: 20 *State R.* 302; 27 *Id.* 75; 23 *Id.* 30; 26 *Id.* 231; and the authorities there cited.

But without regard to any expressed intention of the testator concerning the purpose of the trust, the legacy is absolutely Mrs. Snyder's, because it is given to her and her heirs; to her for life, and then to her heirs. The trust, if valid, does not affect the real title. The equity form does not at all obscure the substantial title. A devise to one for life, with remainder to his heirs, or to the heirs of his body, in legal or equitable form, gives a fee simple or fee tail in land: 20 *State R.* 264; 21 *Id.* 343; 24 *Id.* 252; and an absolute right to personal property: 23 *Id.* 10, 388; 28 *Id.* 103; 30 *Id.* 168, 180; 19 *Ves.* 73; 1 *Bro. C. C.* 219; 2 *Id.* 33; 2 *Ves. Sr.* 646.

Suppose the testator did intend, really to give his daughter the substantial title, and yet to restrain her power over it. That the law never allows, except on account of some sort of legal or equi-

[Bush's Appeal.]

table incapacity in the owner: 19 *State R.* 41, 369; 20 *Id.* 303; 26 *Id.* 231.

In old feudal times, this principle showed itself in Shelly's Case, and was applied to prevent frauds upon the feudal tenures; and this was a perfectly natural application of it then; for it was natural that the then existing system should be guarded from violation. Afterwards, it was applied to prevent the perpetuation of estates, and covering them from the reach of creditors: *Smith on Executory Interests,* §§ 419, 424.

It appears again in the statute of uses, to prevent frauds upon the feudal tenures, and to guard the rights of inheritance, curtesy, and dower; it declares that the substantial estate shall be the true legal one. It struck down the formal title, and established the real one, as the only true one.

It appears again in numerous decisions, setting aside all restrictions of the uses and disposition of property, that are inconsistent with the substantial title; and in the doctrine of merger, which unites several estates into one, according to their substantial character, and overlooks the mere form.

It appears very broadly in our law, which makes all estates in land, and interests in all kinds of property, whether held in legal or equitable form, subject to legal execution for debts, and subject to the ordinary rules of descent; and in our law converting estates tail into fees simple. In these cases also, it is the substantial estate that is regarded, and not the formal one.

If we depart from this plain and just principle, in judging of the quantity of estates, we can have no reliable guide through the mazes of the infinitely various forms in which estates are limited in wills and deeds; and we must content ourselves with a guess for each case, or, with its practical equivalent, a mere copying of the decision some Lord HALE, or MANSFIELD, pronounced perhaps a century ago, in a case where we find approximately similar expressions in the form of the grant.

We think that the decree of the court below is right, except as to costs. The form given to the legacy was in favour of the appellant's position, and his duty was not clear, and therefore he ought not to pay costs.

> Decree affirmed, the costs to be paid out of the fund in the hands of the trustee.

STRONG, J., and READ, J., dissented.